JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED JACKSON, et al., <br>     Plaintiffs, <br><br> v. <br><br> DELOITTE & TOUCHE LLP, et al., <br>     Defendants. | CV 20-5774 DSF (MRWx) <br><br> Order DENYING Motion to Compel Arbitration; Order REMANDING Case |

    This case was removed from state court under the Federal Arbitration Act because it is purportedly related to an international arbitration agreement. Defendant Opus Fund Services (USA), LLC now moves to compel arbitration. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for August 10, 2020 is removed from the Court's calendar.

    The purportedly relevant arbitration clause is contained in a contract between non-party Opus Fund Services (Bermuda) ("Opus Bermuda"), non-party Direct Lending Income Fund, L.P. ("DLIF"), and that fund's manager, non-party Direct Lending Investments, LLC.[1] Plaintiffs are investors in DLIF and the moving (and removing) Defendant is Opus Fund Services (USA), LLC ("Opus USA"), an affiliate of Opus Bermuda.

    Opus USA says that Plaintiffs, complete strangers to the arbitration agreement, can be forced to arbitrate their claims because Opus USA's

---

[1] The Court refers to DLIF and DLI collectively as the "DLI Entities."

interactions with Plaintiffs were pursuant to a contract between Opus Bermuda and the DLI entities. The Supreme Court, on the other hand, says, "The first principle that underscores all of our arbitration decisions is that arbitration is strictly a matter of consent." Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407, 1415 (2019) (internal quotation marks omitted).

The structure of the relationship is basically that Opus USA is a subcontractor of Opus Bermuda that had contracted with the DLI Entities to provide certain services with respect to the investors in DLIF. Plaintiffs, investors in DLIF, claim that Opus USA made negligent and intentional misrepresentations to them in the course of providing those services. Opus USA seems to think that because the misrepresentations happened in the course of its work under the contract with the DLI Entities that Plaintiffs can be forced to arbitrate under a theory of equitable estoppel.

To start, the relationship between the parties is directly analogous to the relationship in Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006), where the plaintiff was found not to be bound by the arbitration agreement. In Comer, the plaintiff was a participant in an ERISA plan. The plan trustees entered into a contract with an investment advisor. That contract contained an arbitration agreement. The plaintiff eventually sued the investment advisor for breach of fiduciary duty. The Ninth Circuit found that the plaintiff was not bound by the arbitration clause under an equitable estoppel theory because:

> Comer was simply a participant in trusts managed by others for his benefit. He did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them. Nor did he do so by bringing this lawsuit, which he bases entirely on ERISA, and not on the investment management agreements. Smith Barney's attempt to shoehorn Comer's status as a passive participant in the plans into his "knowing exploitation" of the investment management agreements fails.

Id. at 1102.

Similarly, Plaintiffs were passive participants in an investment fund. The manager of that fund entered into an agreement with Opus Bermuda. Plaintiffs are not enforcing or taking advantage of the terms of that agreement – their claims arise entirely under tort law.

Even putting Comer aside, Opus USA's argument – found at pages 7-10 of their opening memorandum – is notably thin on connecting any of the equitable estoppel cases it cites to anything close to the factual circumstances of this case. A district court case is quoted for the proposition that "Federal courts routinely enforce arbitration clauses against nonsignatories who bring claims under the contract containing the arbitration provision." But Plaintiffs do not bring any claims under the contract. The Ninth Circuit is quoted as saying "we explained that 'nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" But Opus USA makes no attempt to show that "ordinary contract or agency principles" would bind Plaintiffs to the arbitration agreement. The Ninth Circuit is again cited for the proposition that a "party who attempts to enforce another party's contractual rights is bound by the arbitration agreements in those contracts." But Plaintiffs are clearly not enforcing the DLI Entities' rights under the contract.

There are other cases cited, to the same end, but there's no reason to further belabor the point. The only relationship between this case and the contract that contains the arbitration clause is that Opus USA was fulfilling its obligations *to the DLI Entities* under *its* contract[2] with the DLI entities when it allegedly made the false representations. There is no transitive property of contracts. An arbitration agreement somewhere in a stream of commerce for a good or service does not mean that everyone else in that stream can be forced to arbitrate.

---

[2] Even this relationship was really between the DLI Entities and Opus Bermuda and so even more remote from a direct relationship between Opus USA and Plaintiffs.

3

The motion to compel arbitration is DENIED. Because the only basis for jurisdiction in this Court was the purported applicability of an international arbitration agreement, the case is REMANDED to the Superior Court of California, County of Los Angeles.

IT IS SO ORDERED.

Date: July 31, 2020

*[signature]*
Dale S. Fischer
United States District Judge